**Affirmed and Memorandum Opinion filed June 25, 2015.**



In The

# Fourteenth Court of Appeals

### NO. 14-15-00205-CV

## IN THE INTEREST OF L.E.R., A CHILD

**On Appeal from the 314th District Court
Harris County, Texas
Trial Court Cause No. 2014-00691J**

## M E M O R A N D U M   O P I N I O N

C.E.W. ("Mother") appeals the trial court's final decree terminating her parental rights, and appointing the Department of Family and Protective Services (the "Department") as sole managing conservator of L.E.R. ("the Child"). In two issues the Mother challenges the legal and factual sufficiency of the evidence to support the trial court's finding under subsections 161.001(D), (E) & (O) of the Texas Family Code. S.A.R. ("Father") also appeals the trial court's final decree terminating his parental rights. In five issues the Father challenges the legal and

factual sufficiency of the evidence to support the trial court's findings under (1) subsections 161.001 (E), (N) & (O), and section 161.007(a) of the Texas Family Code, and (2) that termination of his rights would be in the best interest of the Child. We affirm.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The Child was born September 25, 2013. On October 9, 2013, the Department received a referral alleging neglectful supervision of the Child by his mother. The Child's maternal grandmother, ("the Grandmother"), contacted law enforcement officers several times due to her concern for the Child. The report alleged that the Father was "totally in control" of the Mother, the Father used "street drugs," and that the Mother "popped bars," and had possibly stolen the Grandmother's prescription pain medication. On January 24, 2014, the Department received a second referral alleging the Mother and Father neglected the Child by leaving him with the Grandmother for several days at a time. The report alleged that when the Mother returned home she smelled like marijuana smoke, the Father was a known drug user, and that the Father had a history of violence against the Mother. It was reported that the Mother was "out of control . . . does not attend school, and exposes her child to drugs."

On February 7, 2014, the Department filed its original petition for protection of the Child and for termination of the parents' rights to the Child. On April 7, 2014, the Department filed Family Service Plans for both parents. The plans noted that the Child was removed from the Mother's home due to alleged neglectful supervision, and the fact that the Father was 21 years old, and the Mother was 15 years old at the time the Child was conceived. The crime of sexual assault was reported to law enforcement authorities. It was also reported that the Father admitted to marijuana use, and the Mother admitted "popping pills" prior to her

pregnancy.

The Mother's service plan required her to:

- Attend teen parenting classes;
- Participate in a one-time domestic violence awareness class;
- Complete individual counseling;
- Maintain her grades to passing standards and complete the requirements to obtain her high school diploma;
- Attend all court hearings, permanency conferences, scheduled visitations, and meetings requested by the Department or the court;
- Avoid criminal activity;
- Demonstrate an attachment to the child through regular parent-child visitation;
- Participate in a psychological evaluation and drug assessment and treatment, if recommended; and
- Maintain full- or part-time stable employment.

The Father's service plan required him to:

- Participate in a domestic violence certification program;
- Attend all court hearings, permanency conferences, scheduled visitations, and meetings requested by the Department or the court;
- Submit to random drug testing;
- Avoid criminal activity;
- Demonstrate an attachment to the child through regular parent-child visitation;
- Maintain stable employment; and
- Participate in a psychological evaluation and drug assessment and treatment, if recommended.

3

On February 5, 2015, the termination case against both parents was tried to the court. Prior to any witness testimony the Department introduced into evidence the Child's birth certificate; the DNA test result showing the paternity of the Child; the Father's February 20, 2014 positive drug test for PCP and marijuana; the Father's April 15, 2014 positive drug test for cocaine and marijuana; the Mother's August 20, 2014, and November 20, 2014 positive drug tests for cocaine; the Father's order of deferred adjudication for the offense of sexual assault of a child; the Father's conviction for assault-bodily injury; and the reporter's record from the show cause hearing held February 20, 2014. Both the Mother and the Father objected to the drug test results on the grounds of hearsay and chain of custody. The Father objected to the judgments of deferred adjudication and conviction as not being authenticated. The Father also objected to the record of the show cause hearing on hearsay grounds. The trial court overruled all objections and admitted the evidence.

At the show cause hearing, the record of which was admitted at trial, the Mother testified that she had not taken Xanax in over a year. The Mother's testimony was contradictory about smoking marijuana. At first she denied ever smoking marijuana, but later admitted smoking marijuana two months before the hearing. The Mother testified that she no longer maintained a relationship with the Father, but permitted him to see the Child. Although the Mother admitted writing a paper about the Father's physical abuse of her, at the show-cause hearing, she denied the physical violence. The Mother took the Child to the doctor when he had a lump on his chest and for immunizations. She testified the Child had never been injured while living with her.

The Father testified that he was unaware of the Mother's age at the time they were engaged in a sexual relationship. When he learned she was underage he

ended the sexual relationship. The last time he used drugs was one or two months before the hearing. The Father testified that when he is working he contributes money to the Child's welfare.

Shayolonda Herron, the caseworker at the time of the show cause hearing, testified that the Mother admitted that she used drugs, and that her relationship with the Father was physically violent. Herron had not met the other members of the family. The Grandmother, also reported violence by the Father against the Mother.

The Grandmother testified that she took care of the Child while the Mother was in school. The Grandmother called the Department because the Mother would leave home for days at a time, and would return home smelling like marijuana and cigarettes. The Grandmother testified that the Mother did not return home inebriated or under the influence of drugs or alcohol. The paternal grandfather threatened the Grandmother if she involved the Department. The Grandmother testified that she told the Department she did not want to care for the Child, but stated she said so because she was afraid of the Father's family. The Grandmother suspects the Mother of stealing prescription medication, but has not seen her doing so. The Mother lives with the Grandmother and some of the Grandmother's medication is missing.

At the conclusion of the show cause hearing the trial court explained to the parents that they would be drug tested that day, and that if they wanted to be reunited with their child they would need to follow the Family Service Plans. The Father responded, "I just want to say, she does not do drugs. I do." When the trial court asked why the Mother admitted using drugs, the Father responded, "She was with me. She was worried it would be in her system."

Almost one year after the show cause hearing, the trial court held a bench

trial on the termination of the parents' rights. At trial, Leeshawn Lewis[1] testified that the Child was one year old and placed in a foster home. With regard to adherence to the Family Service Plans, Lewis testified that the Father had attended therapy and completed a drug assessment. The Father began drug treatment, but was arrested for assault and incarcerated. Lewis did not know if he completed therapy or treatment while in jail. The Father tested positive for illegal drugs multiple times while the termination case was pending. The Father completed a psychological evaluation, which resulted in recommendations that the Father adhere to the conditions of his community supervision and participate in a sexual-offender class. The psychological evaluation noted concern that the Father did not understand that his relationship with the Mother at her age was inappropriate.

With regard to the Mother's compliance with the Family Service Plan, Lewis testified that the Mother participated in individual therapy and parenting classes. The Mother "continuously denied using any illegal substances, in spite of her [positive] drug test." In July 2014 and October 2014, the Mother tested positive for cocaine. Lewis testified that the October test showed increasing levels of cocaine in the Mother's system. The Mother has consistently visited the Child.

Neither set of grandparents can be considered as potential placements for the Child because they do not have homes. The Department has an approved home study on a friend of the Father's family who is willing to adopt the Child. Their home is stable; both parents have stable jobs, and the financial ability to provide for the Child. The Department is also conducting a home study on a relative in Florida pursuant to the Interstate Compact on the Placement of Children (ICPC). At the time of trial, the Department sought to place the Child with the family friend

---

[1] Although not identified in the reporter's record, it appears from the context of Lewis's testimony that she is a caseworker with the Department.

of the Father's family, who lives in Houston.

Ebonee Jones, a caseworker for the Department, testified that during a visit with the Mother the Child began "screaming, started crying," when the Mother walked into the room where the visit was taking place. It was Jones's opinion that the Child was "mostly bonded with [the] paternal aunt."

Hannah Khalil with Child Advocates testified that she has met the family friend on the paternal side who is interested in adopting the Child. She testified that the parents have a stable home, stable employment, and have raised four children of their own. Khalil testified that whether the family in Houston or the relative in Florida adopts the Child, it was in his best interest of the Child for the parental rights to be terminated.

After the Department rested, the Father testified that he had used drugs in the past, but had been clean for one year. He testified that the Mother had never used drugs. He asked that if his rights were terminated he would like the Child to be placed with relatives or a family friend.

The Mother testified that she had been working at a grocery store for five days. Before that she worked at "Party Barn Kids." She had not provided check stubs to the caseworker because the caseworker did not ask for them. She finished her high school education, but was waiting to "walk the stage in June." When she saves up enough money she plans to get an apartment for her and her mother. The Mother expressed confusion as to how she tested positive for cocaine. She said she had been ill during those times taking cough medicine, amoxicillin, and acetaminophen. It was her opinion that those medications caused a false positive for cocaine. She visited the Child every two weeks. She was able to bond with the Child in the beginning, but was unsuccessful when the Child moved to a different foster home and bonded with the foster parents.

## II.    ANALYSIS

In two issues the Mother argues the evidence was legally and factually insufficient to support the trial court's findings under subsections 161.001(1)(D), (E) & (O) of the Texas Family Code. In his first four issues, the Father argues the evidence was legally and factually insufficient to support the trial court's findings under subsections 161.001(1)(E), (N) & (O) and section 161.007(a) of the Texas Family Code.

Parental rights can be terminated upon proof by clear and convincing evidence that (1) the parent has committed an act prohibited by section 161.001(1) of the Family Code; and (2) termination is in the best interest of the child. Tex. Fam. Code Ann. § 161.001(1), (2) (West 2014); *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009). Involuntary termination of parental rights is a serious matter implicating fundamental constitutional rights. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985); *In re D.R.A.*, 374 S.W.3d 528, 531 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Although parental rights are of constitutional magnitude, they are not absolute. *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002) ("Just as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right.").

Due to the severity and permanency of the termination of parental rights, the burden of proof is heightened to the clear and convincing evidence standard. *See* Tex. Fam. Code Ann. § 161.001; *In re J.F.C.*, 96 S.W.3d 256, 265–66 (Tex. 2002). "Clear and convincing evidence" means "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007 (West 2014); *In re J.F.C.*, 96 S.W.3d at 264. This heightened burden of proof results in a

heightened standard of review. *In re C.M.C.*, 273 S.W.3d 862, 873 (Tex. App.—Houston [14th Dist.] 2008, no pet.).

In reviewing the legal sufficiency of the evidence in a parental termination case, we must consider all the evidence in the light most favorable to the finding to determine whether a reasonable fact finder could have formed a firm belief or conviction that its finding was true. *In re J.O.A.*, 283 S.W.3d at 336. We assume that the fact finder resolved disputed facts in favor of its finding if a reasonable fact finder could do so, and we disregard all evidence that a reasonable fact finder could have disbelieved. *Id.*; *In re G.M.G.*, 444 S.W.3d 46, 52 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

In reviewing the factual sufficiency of the evidence, we consider and weigh all of the evidence, including disputed or conflicting evidence. *In re J.O.A.*, 283 S.W.3d at 345. "If, in light of the entire record, the disputed evidence that a reasonable fact finder could not have credited in favor of the finding is so significant that a fact finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.* We give due deference to the fact finder's findings and we cannot substitute our own judgment for that of the fact finder. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). The fact finder is the sole arbiter when assessing the credibility and demeanor of witnesses. *Id.* at 109.

## A.    Predicate Termination Findings

The trial court made predicate termination findings that the Mother had committed acts establishing the grounds set out in subsections (D), (E), and (O) of section 161.001(1), and that the Father had committed acts establishing the grounds in subsections 161.001(E), (N), and (O), and section 161.007(a). Section 161.001 provides that termination of parental rights is warranted if the fact finder

9

finds by clear and convincing evidence, in addition to the best-interest finding, that the parent has:

> (D) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child;
>
> (E) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child;
>
> * * * * *
>
> (N) constructively abandoned the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than six months, and:
>
> > (i) the department has made reasonable efforts to return the child to the parent;
> >
> > (ii) the parent has not regularly visited or maintained significant contact with the child; and
> >
> > (iii) the parent has demonstrated an inability to provide the child with a safe environment; [or]
>
> (O) failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child[.]

Tex. Fam. Code Ann. § 161.001(1).

Section 161.007(a) provides that the court "shall order the termination of the parent-child relationship of a parent and a child if the court finds by clear and convincing evidence that (1) the parent has engaged in conduct that constitutes an

offense under under Section 21.02,[2] 22.011,[3] 22.021,[4] or 25.02,[5] Penal Code; (2) as a direct result of the conduct described by Subdivision (1), the victim of the conduct became pregnant with the parent's child; and (3) termination is in the best interest of the child."

Only one predicate finding under section 161.001 is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). We will address the trial court's findings under subsection 161.001(E).

"Under subsection (E), the relevant inquiry is whether evidence exists that the endangerment of the child's physical well-being was the direct result of the parent's conduct, including acts, omissions, or failures to act." *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.); *see also In re S.M.L.*, 171 S.W.3d 472, 477 (Tex. App.—Houston [14th Dist.] 2005, no pet.). In this context, endanger means "to expose to loss or injury; to jeopardize." *In re T.N.*, 180 S.W.3d 376, 383 (Tex. App.—Amarillo 2005, no pet.) (quoting *In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996)). A child is endangered when the environment creates a potential for danger that the parent is aware of but disregards. *In re S.M.L.*, 171 S.W.3d at 477.

Termination under subsection 161.001(1)(E) must be based on more than a single act or omission—the evidence must demonstrate a voluntary, deliberate, and

---

[2] Section 21.02 prohibits continuous sexual abuse of a young child or children. Tex. Penal Code Ann. § 21.02 (West Supp. 2014).

[3] Section 22.011 prohibits sexual assault. Tex. Penal Code Ann. § 22.011 (West 2011).

[4] Section 22.021 prohibits aggravated sexual assault. Tex. Penal Code Ann. § 22.021 (West Supp. 2014).

[5] Section 25.02 prohibits sexual conduct with the actor's ancestor, stepchild, stepparent, brother, or sister. Tex. Penal Code Ann. § 25.02 (West 2011).

conscious course of conduct by the parent. *In re C.A.B.*, 289 S.W.3d 874, 883 (Tex. App.—Houston [14th Dist.] 2009, no pet.). "Although 'endanger' means more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal environment, it is not necessary that the conduct be directed at the child or that the child actually suffers injury." *In re T.N.*, 180 S.W.3d at 383; *see also In re J.O.A.*, 283 S.W.3d at 336 (holding that endangering conduct is not limited to actions directed toward the child). Danger to the child's well-being may be inferred from parental misconduct alone, and courts may look at parental conduct both before and after the child's birth. *Id.* at 345. ("[T]he endangering conduct may include the parent's actions before the child's birth, while the parent had custody of older child, including evidence of drug usage."). The conduct need not occur in the child's presence, and it may occur "both before and after the child has been removed by the Department." *Walker v. Tex. Dep't of Family & Protective Servs.*, 312 S.W.3d 608, 617 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).

As a general rule, subjecting a child to a life of uncertainty and instability endangers the child's physical and emotional well-being. *In re R.W.*, 129 S.W.3d 732, 739 (Tex. App.—Fort Worth 2004, pet. denied); *see also In re J.O.A.*, 283 S.W.3d at 345, n. 4. Furthermore, a parent's use of narcotics and its effect on his or her ability to parent may qualify as an endangering course of conduct. *In re T.N.*, 180 S.W.3d at 383 ("A parent's engaging in illegal drug activity after agreeing not to do so in a service plan for reunification with her children is sufficient to establish clear and convincing proof of voluntary, deliberate, and conscious conduct that endangered the well-being of her children.").

Illegal drug use may support termination under subsection 161.001(1)(E) because "it exposes the child to the possibility that the parent may be impaired or imprisoned." *Walker*, 312 S.W.3d at 617. This court has also held that a parent's

decision to engage in illegal drug use during the pendency of a termination suit, when the parent is at risk of losing a child, may support a finding that the parent engaged in conduct that endangered the child's physical or emotional well-being. *In re A.H.A.*, No. 14-12-00022-CV; 2012 WL 1474414 (Tex. App.—Houston [14th Dist.] Apr. 26, 2012, no pet.) (mem. op.).

The evidence at trial showed that both parents tested positive for drugs while the termination case was pending. The Mother tested positive for cocaine twice, and the Father tested positive for marijuana. The Father admitted previous drug use, but claimed to have been clean for one year prior to trial. This testimony was disputed by the evidence of positive drug tests.

In addition to the parents' use of illegal drugs, the evidence supports a finding that the parents subjected the Child to endangerment by subjecting him to a violent environment. A parent's abusive or violent conduct can produce a home environment that endangers a child's well-being. *In re J.I.T.P.*, 99 S.W.3d 841, 845 (Tex. App.—Houston [14th Dist.] 2003, no pet.). Domestic violence, want of self-control, and propensity for violence may be considered as evidence of endangerment. *See id.* (considering domestic violence, even when the child was not the intended victim). Therefore, the trial court could have considered the Mother's allegations of physical violence, the Father's conviction for assault, and the Mother's repeated reconciliation with the Father. *See Walker*, 312 S.W.3d at 617.

Reviewing the evidence under the appropriate standards, we conclude that the trial court could have formed a firm belief or conviction that termination of the parents' rights is warranted under section 161.001(1)(E). Because there is legally and factually sufficient evidence of endangerment, we need not address the parents' arguments that the evidence is insufficient to support the trial court's

findings under section 161.001(1)(D), (N), and (O). Further, we need not address the Father's contention that the evidence is insufficient under section 161.007(a). *See In re A.V.*, 113 S.W.3d at 362. We overrule Mother's two issues and Father's issues one through four.

## B. Best Interest of the Child

In his fifth issue the Father challenges the legal and factual sufficiency of the evidence to support the trial court's finding that termination is in the best interest of the Child. The Mother does not challenge the trial court's best-interest finding.

A strong presumption exists that the best interest of the child is served by keeping the child with its natural parent, and the burden is on the Department to rebut that presumption. *In re U.P.*, 105 S.W.3d 222, 230 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). Evidence supporting termination under section 161.001(1)(E) supports a finding that termination is in the best interest of the child. *See In re C.H.,* 89 S.W.3d at 28. ("While it is true that proof of acts or omissions under section 161.001(1) does not relieve the petitioner from proving the best interest of the child, the same evidence may be probative of both issues.").

The factors the trier of fact may use to determine the best interest of the child include: (1) the desires of the child; (2) the present and future physical and emotional needs of the child; (3) the present and future emotional and physical danger to the child; (4) the parental abilities of the persons seeking custody; (5) the programs available to assist those persons seeking custody in promoting the best interest of the child; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) acts or omissions of the parent that may indicate the existing parent-child relationship is not appropriate; and (9) any excuse for the parents' acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *In re U.P.*, 105 S.W.3d at 230; *see*

14

*also* Tex. Fam. Code Ann. § 263.307(b) (West 2014) (listing factors to consider in evaluating parents' willingness and ability to provide the child with a safe environment).

There is a strong presumption that the best interest of a child is served by keeping the child with his or her natural parent. *In re D.R.A.*, 374 S.W.3d at 533. Prompt and permanent placement of the child in a safe environment is also presumed to be in the child's best interest. Tex. Fam. Code Ann. § 263.307(a).

The Father contends that the presumption in his favor is not rebutted because both parents were no longer using drugs; the Child was not removed from the home due to injury or neglect; the evidence addressing stability and future placement was conclusory; and the Father did not know the Mother was underage at the time they began their relationship.

### 1. Needs of and Danger to the Child

With regard to the present and future emotional and physical needs of the child and the present and future emotional and physical danger to the child, both parents had tested positive for drugs while the termination case was pending. Neither parent maintained a stable home, nor did the Child's grandparents maintain a home. The Child was removed from the home because of both parents' drug use and the allegation of domestic violence. A parent's drug use supports a finding that termination is in the best interest of the child. *See In re M.R.*, 243 S.W.3d 807, 821 (Tex. App.—Fort Worth 2007, no pet.).

The Father's knowledge of the Mother's age, while the trial court could have considered this, is not a factor to be reviewed with regard to the best interest of the Child. *See Holley,* 544 S.W.2d at 371–72.

## 2. Stability and Compliance with Services

In determining the best interest of the child in proceedings for termination of parental rights, the trial court may properly consider that the parent did not comply with the court-ordered service plan for reunification with the children. *See In re E.C.R.*, 402 S.W.3d 239, 249 (Tex. 2013) ("Many of the reasons supporting termination under subsection O also support the trial court's best interest finding.").

In this case, neither parent completed the tasks contained in the Family Service Plans. Despite positive drug tests for cocaine, the Mother continued to deny drug use. The Father, having been convicted of assault, was incarcerated at the time of trial. As stated earlier, neither had a stable home or provided proof of employment. The parents' failure to comply with court-ordered tasks, drug use during the termination proceedings, and failure to provide a safe and stable environment support the trial court's finding that termination is in the best interest of the children.

The Father argues that neither parent should have been subjected to a service plan because the Child was not removed from the home due to abuse or neglect. *See* Tex. Fam. Code Ann. § 161.001(O) (requiring compliance with a service plan if the child has been removed from the parent due to abuse or neglect). The Father bases his argument on Lewis's testimony that the Child was not injured when he was removed from the Mother. The Family Code does not require actual injury to the child before removing a child from a parent. The removal standards of abuse or neglect of the child necessarily include the risk or threats of the environment in which the child is placed. *In re E.C.R.*, 402 S.W.3d at 248. There was evidence at trial that the child was removed due to the Mother's neglect, both parents' drug use, and the Father's violence toward the Mother.

### 3. Child's Desires and Proposed Placement

The Child was an infant at the time of trial, and unable to express his desires. When children are too young to express their desires, the factfinder may consider that the children have bonded with the foster family, are well cared for by them, and have spent minimal time with a parent. *In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

The stability of the proposed home environment is an important consideration in determining whether termination of parental rights is in the child's best interest. *See In re J.N.R.*, 982 S.W.2d 137, 143 (Tex. App.—Houston [1st Dist.] 1998, no pet.). A child's need for permanence through the establishment of a "stable, permanent home" has been recognized as the paramount consideration in a best interest determination. *See In re K.C.*, 219 S.W.3d 924, 931 (Tex. App.—Dallas 2007, no pet.). Therefore, evidence about the present and future placement of the children is relevant to the best interest determination. *See In re C.H.*, 89 S.W.3d at 28.

In this case, the caseworker testified that the Child appeared to have bonded with the foster family. After visiting approximately every two weeks for almost a year, the Mother admitted she had not bonded with the Child. The Father testified that the Child knew who he was, but did not express a bond with the Child.

### 4. Parenting Abilities and Family Support

Neither parent had family support to aid in parenting. The Grandmother testified that she felt threatened by the Father's family. Neither the paternal or maternal grandparents were considered for placement of the child because they did not have homes. The Grandmother was the first person to report the Mother's neglect to the Department.

The record contains evidence supporting the best interest finding based on the parents' drug use, lack of stable employment, lack of a stable home, and failure to comply with court-ordered services. *See In re S.B.*, 207 S.W.3d 877, 887–88 (Tex. App.—Fort Worth 2006, no pet.) (considering the parent's drug use, inability to provide a stable home, and failure to comply with a family service plan in holding the evidence supported the best interest finding).

Based on the evidence presented, the trial court could have reasonably formed a firm belief or conviction that terminating the parents' rights was in the Child's best interest so that he could promptly achieve permanency through adoption by a foster family. *See In re T.G.R.-M.*, 404 S.W.3d 7, 17 (Tex. App.—Houston [1st Dist.] 2013, no pet.); *In re M.G.D.*, 108 S.W.3d 508, 513–14 (Tex. App.—Houston [14th Dist.] 2003, pet. denied).

Applying the applicable *Holley* factors to the evidence, we conclude that legally and factually sufficient evidence supports the trial court's finding that termination of the parents' rights was in the best interest of the Child. We overrule the Father's fifth issue.

We affirm the trial court's judgment.


/s/    Marc W. Brown
       Justice


Panel consists of Justices Christopher, Brown, and Wise.

18